

**SIGNED this 27th day of August, 2014.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 13-51905-CAG |
| | § | |
| CAVU/ROCK PROPERTIES | § | |
| PROJECT I, LLC, | § | CHAPTER 11 |
|     Debtor. | § | |

| | | |
|---|---|---|
| CAVU/ROCK PROPERTIES | § | |
| PROJECT I, LLC, | § | |
|     Plaintiff | § | |
| | § | ADV. NO. 13-05057-CAG |
| v. | § | |
| | § | |
| GOLD STAR CONSTRUCTION, INC., | § | |
|     Defendant. | § | |
| | § | |

**MEMORANDUM OPINION ON PLAINTIFF'S COMPLAINT TO AVOID LIEN
AND OBJECTION TO CLAIM**

Came on to be considered the above-numbered adversary proceeding. After a trial held on July 15, 2014, the Court took this case under advisement. The Court considered the parties' pleadings, the arguments presented at the hearing, and the applicable law. For the reasons stated in this Memorandum Opinion, the Court is of the opinion that Defendant, Gold Star

Construction, Inc.'s ("Gold Star") lien is invalid and of no effect. The Court is further of the opinion that Gold Star's claim should be allowed as unsecured in the amount of $743,382.29.

As a preliminary matter, venue is proper pursuant to 28 U.S.C § 1409(a). This matter arises in an adversary proceeding referred to this Court by the Standing Order of Reference entered in this District. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(K) and (O). This Opinion constitutes this Court's findings of fact and conclusions of law, pursuant to Fed. R. Bankr. P. 7052. This Court is of the opinion that it has jurisdiction and authority to render a final judgment in this adversary proceeding. In the event that it does not, this Opinion may be treated as proposed findings of fact and conclusions of law subject to *de novo* review. 28 U.S.C. § 158(c)(1) (2012); Fed. R. Bankr. P. 9033(d).

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, Cavu/Rock Properties Project I, LLC (Cavu Rock), owns a residential housing development in Bakersfield, California (the "Property"). This adversary proceeding arises from Gold Star's claim in Cavu Rock's Chapter 11 Bankruptcy Proceeding and related mechanic's lien.

In 2005, Charles Krause, John Stevenson, Bradley Leen, and Eugene Winter associated for the purpose of acquiring the Property in order to "flip" it for a profit or to develop the Property themselves. Krause and Stevenson formed Cavu Rock to purchase the Property and obtain development funding. On December 15, 2005, Cavu Rock, Leen, and Winter entered into an agreement (the "Agreement to Form") in which Winter assigned his rights to acquire the Property to Cavu Rock, and Cavu Rock agreed to share profits from its eventual sale. (GS2[1]). Winter formed Gold Star in March of 2006 to facilitate the development of the Property. Winter is Gold Star's president and sole stockholder. Cavu Rock hired Gold Star to demolish existing

---
[1] "GS" denotes Gold Star's exhibits.

2

structures on the Property so that new homes could be constructed. Gold Star completed the demolition work in 2006 pursuant to a separate Demolition Agreement and was fully compensated for this work.

Cavu Rock purchased the Property using a loan from Wells Fargo. Wells Fargo holds a lien on the Property that exceeds $6,600,000. Cavu Rock was not able to flip the Property, so the parties decided to develop it themselves and sell individual lots to end buyers. Cavu Rock, Gold Star, Winter, Leen, and Stevenson entered into a new agreement (the "Development Agreement") on March 25, 2008. According to Winter's testimony at trial, the purpose of the Development Agreement was to attract additional funding to develop the Property.

The Development Agreement states that Cavu Rock would "source and provide equity and debt financing to fund the project lot development. Gold Star will Act as the general contractor to develop the lots, construct homes, and market and sell to buyers." (GS3 at ¶ 1.1) The parties to the Development Agreement "acknowledge[d] that the project has a critical path but must proceed on a need to spend basis for Phase One and Two. Owner (Cavu Rock) must approve the critical path at its sole discretion and must agree to all expenditures in advance." (GS3 at ¶ 1.3). Gold Star would "act as general contractor for the land development and will invoice Owner (Cavu Rock) at cost for all land development expenditures." (GS3 at ¶ 1.4). Gold Star was to oversee sales to end buyers, build homes on the lots, and deposit the proceeds in an escrow fund. (GS3 at ¶ 1.5-1.6). Cavu Rock and Gold Star had joint authority to approve disbursements from the escrow fund. Disbursements were to be split between Cavu Rock, Gold Star, and Leen. (GS3 at ¶ 1.11). The Development Agreement contains a provision that "[N]othing in this Agreement shall be construed, deemed or interpreted by the parties or by any third person to create the relationship of principal and agent or of partnership, joint venture or

3

any other association other than that of debtor-creditor between the parties." (GS3 at ¶ 5.10). A choice of law clause dictates that Texas law governs. (GS3 at ¶ 5.1).

Gold Star commenced construction of curbs, gutters, and streets in 2009 and built homes on the Property. The parties disagree as to whether Gold Star was fully compensated for development costs. As of the trial held on July 15, 2014, the Property contained both completed and uncompleted lots. Some of the completed lots have now been sold.

Gold Star recorded a mechanic's lien on the Property in Kern County, California Official Records on November 21, 2011, in the amount of $1,084,950.90. The City of Bakersfield filed a Notice of Completion on December 19, 2011. According to Gold Star, it recorded the lien as a last resort after Cavu Rock became seriously delinquent in paying Gold Star's invoices for work on the Property. Cavu Rock claims that it paid all invoices that Gold Star submitted. Gold Star filed suit in the Superior Court of the State of California, County of Kern, Metropolitan Division (Case No. S-1500-CV-275859) for breach of contract, mutual open and current account, book account, quantum meruit, enforcement of mechanic's lien, and enforcement of payment bond. The parties came to a partial settlement, agreeing that Wells Fargo's lien is superior to any lien that Gold Star may have.

Cavu Rock filed for Chapter 11 Bankruptcy here in the Western District of Texas on July 19, 2013 (Case No. 13-51905), staying the proceedings in Kern County. Gold Star filed a Proof of Claim for $753,382.29, secured by the mechanic's lien on the Property. (ECF No. 5 in Case No. 13-51905). Cavu Rock filed this Adversary Proceeding on July 23, 2013, asking this Court to declare Gold Star's lien void and disallow its claim. The Court confirmed Cavu Rock's Chapter 11 Plan on January 7, 2014. The Plan provides for Gold Star's claim should this Court allow it in this adversary proceeding. Cavu Rock filed a Motion for Partial Summary Judgment

4

(ECF No. 31) on March 14, 2014, asking the Court to find that Gold Star's claim is unsecured pursuant to 11 U.S.C. § 506 because Wells Fargo's superior lien exceeds the Property's total value. The Court held a hearing on the Motion for Partial Summary Judgment on April 9, 2014, took the matter under advisement, and granted partial summary judgment in favor of Cavu Rock in an Oral Ruling read on May 21, 2014. The remaining issues proceeded to trial on July 15, 2014, and the Court took them under advisement.

## PARTIES' CONTENTIONS

Cavu Rock urges this Court (1) to declare Gold Star's lien invalid, (2) disallow its claim in its entirety, and (3) award it reasonable attorney's fees. According to Cavu Rock, the lien is invalid because Gold Star is a partner in the development of the Property pursuant to the Texas Business Organizations Code, rendering it ineligible to hold a lien on the Property. In the alternative, Cavu Rock argues that the lien is invalid because Gold Star did not record it within the timeframe prescribed by California state law.[2] Cavu Rock also contends that Gold Star's claim should be disallowed because Gold Star failed to provide supporting evidence, Gold Star performed work without Cavu Rock's authorization, and Cavu Rock actually overpaid Gold Star for the work it did perform.

Gold Star argues that both its conduct and the express terms of the Development Agreement establish that Gold Star is a general contractor rather than a partner. According to Gold Star, it recorded its lien in a timely fashion pursuant to California state law. Gold Star also maintains that its claim should be allowed because Cavu Rock approved all of the work Gold Star performed as a general contractor but has not fully compensated Gold Star.

---

[2] The parties agree that California state law governs Gold Star's lien on the Property, which is located in California.

5

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This Court finds that Gold Star's claim is valid, but its mechanic's lien is not. Gold Star's status as a partner does not prevent it from holding a lien on the Property as Cavu Rock argues. Gold Star is not a partner within the meaning of Texas Business Organizations Code, and the Property is not partnership property. The lien is deficient, however, because Gold Star did not record it in accordance with California state law. The evidence establishes that Gold Star has a valid, but unsecured, claim in the amount of $743,382.29.

A. <u>Validity of Gold Star's Mechanic's Lien</u>

Gold Star's lien is deficient. Partnership status does not make Gold Star ineligible to hold a lien on the Property. Gold Star did not complete its contract before recording its lien, however, rendering the lien invalid under the California Civil Code.

> *i. Gold Star and Cavu Rock are not partners, nor would a partnership between them undermine Gold Star's lien.*

Cavu Rock's argument regarding Gold Star's status as a partner is unavailing. Reasonable minds could differ as to whether Gold Star and Cavu Rock formed a partnership for the development of the Property. This Court finds that they did not. Regardless, partnership status is not dispositive of Gold Star's ability to have a lien on the Property because the Property belongs to Cavu Rock rather than the alleged partnership between Gold Star and Cavu Rock.

The parties agree that the Texas Business Organizations Code ("TBOC") governs the Development Agreement. Per the TBOC, "an association of two or more persons to carry on a business for profit as owners creates a partnership, regardless of whether: (1) the persons intend to create a partnership; or (2) the association is called a 'partnership,' 'joint venture,' or other name." Tex. Bus. Orgs. Code Ann. § 152.051 (West 2011). The TBOC sets out the following factors indicating whether a partnership exists:

6

> (1) receipt or right to receive a share of profits of the business; (2) expression of an intent to be partners in the business; (3) participation or right to participate in control of the business; (4) agreement to share or sharing: (A) losses of the business; or (B) liability for claims by third parties against the business; and (5) agreement to contribute or contributing money or property to the business.

Tex. Bus. Orgs. Code Ann. §152.051(a) (West 2011). However, "the receipt or right to a share of payment of wages or other compensation to an employee or independent contractor" does not alone create a partnership relationship. Tex. Bus. Orgs. Code Ann. § 152.052(b)(1)(B) (West 2011). Nor does "the right to share or sharing gross returns or revenues, regardless of whether the persons sharing the gross returns or revenues have a common or joint interest in the property from which the returns or revenues are derived." Tex. Bus. Orgs. Code Ann. § 152.052(b)(3) (West 2011). The Supreme Court of Texas has held that no one factor is necessary or dispositive to partnership status. Instead, courts must consider the totality of the circumstances. ***Ingram v. Deere***, 288 S.W. 3d 886, 896-99 (Tex. 2009).[3]

There is no easy answer in Gold Star and Cavu Rock's case. Some of the TBOC factors suggest partnership while others do not. This Court finds that the totality of the circumstances do not indicate that Gold Star and Cavu Rock formed a partnership for the development of the Property.

Several of the factors suggest that Gold Star and Cavu Rock formed a partnership. Gold Star has a right to 40% of the distributable net income from the Property. (GS3 at ¶ 1.1). However, "the right to share or sharing gross returns or revenues," is not alone sufficient to establish a partnership. Tex. Bus. Orgs. Code Ann. § 152.051(b)(3) (West 2011). Cavu Rock claims that Gold Star held itself out to be the Property's "developer," but has not provide

---

[3] The TBOC's predecessor, the Texas Revised Partnership Act ("TRPA"), was still in effect to a limited extent at the time of this ruling. The Supreme Court of Texas made its determination under the TRPA, but noted that the rules for determining partnership status are substantially the same under both statutory schemes. ***Ingram***, 288 S.W.3d at 894 n.4.

7

sufficient evidence to confirm this allegation. The Development Agreement gives Gold Star some control over certain aspects of the business, including marketing and sale of the lots to end buyers. Cavu Rock presented evidence establishing that Gold Star coordinated development of the Property along with Cavu Rock. Gold Star also shared authority to approve disbursements of the proceeds from these sales with Cavu Rock. Certain actions taken by Gold Star and provisions in the Development Agreement indicate that there may be a partnership.

Although some of the TBOC factors favor a finding of partnership, the factors suggesting that there is no partnership are more compelling. Gold Star's control over development was limited and less extensive than Cavu Rock's control. The Development Agreement restricts Gold Star's control by requiring Cavu Rock's approval of expenditures and the critical path of development "at its sole discretion." (GS3 at ¶ 1.3). Nothing in the Development Agreement or the conduct of the parties suggests that Gold Star is liable for debts of the business or third party claims that are not related to Gold Star's own activities. Gold Star does not appear to have contributed capital or property, although it did assign certain rights to acquire the Property to Cavu Rock in the Agreement to Form. There is little evidence indicating that Gold Star ever expressed any intention of being a partner. In fact, the Development Agreement contains an express term stating that "[N]othing in this Agreement shall be construed, deemed or interpreted by the parties or by any third person to create the relationship of principal and agent or of partnership, joint venture or any other association other than that of debtor-creditor between the parties." (GS3 at ¶ 5.10).[4] Instead, Gold Star was to "act as general contractor," invoicing Cavu

---

[4] The Court recognizes that this provision is of limited value. Under Texas common law, the parties' intent was the most important factor in determining whether a partnership exists. *E.g. Federal Sav. & Loan Ins. Corp. v. Griffin*, 935 F.2d 691 (5th Cir. 1991) (giving particular weight to a provision stating lack of intent to form a partnership); *see also Ingram v. Deere*, 288 S.W.3d 886, 895-96 (noting that the parties' intent became less pivotal with the introduction of the TBOC's predecessor, the TRPA). Like the TRPA, the TBOC specifically notes that a partnership is formed "regardless of the persons' intent to create a partnership." Tex. Bus. Orgs. Code Ann. § 152.051(b) (West 2011). Expressions of intent are still relevant to the rules for determining if a partnership is

8

Rock for development expenses. It is not clear that Gold Star associated with Cavu Rock "as an owner" as contemplated by § 152.051.[5] The Development Agreement specifically notes that Cavu Rock is the sole owner of the Property and shall retain title of each lot until it is sold to an end buyer. (GS3 at ¶ 1.1). In light of the totality of the circumstances, this Court finds that Gold Star and Cavu Rock did not form a partnership for the development of the Property.

If this Court did determine Gold Star to be Cavu Rock's partner, the Court would not invalidate the lien on this basis. Cavu Rock argues that "partners do not have a right to assert a mechanic's lien against property that is the subject of the partnership in which they are a partner." (Complaint, ECF No. 1 at ¶ 15). Cavu Rock cites to *Stephens v. Clark* in support of this contention, a 1980 case from the Georgia Court of Appeals. This is not binding authority on this Court, nor does this Court agree with Cavu Rock's reading of this case. The Georgia Court of Appeals' holding was premised on the fact that a party cannot hold a lien on its own property. Consequently, a partner cannot hold a mechanic's lien on partnership property. **Stephens v. Clark**, 268 S.E.2d 361, 363 (Ga. Ct. App. 1980). The case says nothing about property that is "the subject of the partnership," nor does any other case of which this Court is aware. Assuming a partnership does exist between Gold Star and Cavu Rock, the Property could be "the subject of" that partnership. It is not, however, partnership property. The Development Agreement refers to Cavu Rock as "Owner" and holds that "Owner is the owner in fee simple of that certain real property and . . . was formed, among other reasons, in order to acquire and develop the Rio Bravo Project." (GS3 at ¶ A). If Gold Star was Cavu Rock's partner, this would not impair its

---

created per §152.052(a)(2). Section 152.052 is silent as to expressions of intent not to form a partnership, but §152.051's treatment of the parties' intent suggests that statements denying intent to form a partnership are of limited value in this analysis.

[5] The TBOC does not provide a definition of "owner" that is helpful to this Court's analysis under § 152.051(b). In regard to partnerships, the TBOC defines an owner as a partner. Tex. Bus. Orgs. Code Ann. § 1.002(63)(B) (West 2011). This definition applies to Titles 1, 7, and 8, but not Title 4 which governs partnerships. Section 152.051(b) falls within Title 4. Without further guidance from the TBOC or case law, this Court must rely on common sense and the plain language meaning of the word.

ability to place a mechanic's lien on property that belongs to Cavu Rock rather than the partnership.

   *ii.  Gold Star's Lien is Invalid Under California State Law.*

Gold Star did not record its lien in accordance with California state law. A California mechanic's lien is only valid if it is recorded within the timeframe dictated by statute. *See* ***Howard S. Wright Constr. Co. v. BBIC Investors, LLC***, 38 Cal. Rptr. 2d 769, 776 (Cal. Ct. App. 2006). At the time Gold Star recorded its lien, the California Civil Code held that an original contractor must record a mechanic's lien:

> after he completes his contract and before the expiration of (a) 90 days after the completion of the work of improvement as defined in Section 3106 if no notice of completion or notice of cessation has been recorded, or (b) 60 days after recordation of a notice of completion or notice of cessation.

Ca. Civ. Code § 3115 (repealed by Stats 2010 ch. 697 J 16 (SB 189), effective January 1, 2011, operative July 1, 2012, now Cal. Civ. Code § 9200). Although Gold Star may have recorded its lien within 90 days after completion of the work of improvement, the lien is not proper because Gold Star recorded it prior to completing its contract.

Gold Star argues that its November 21, 2011, recording was timely because Gold Star ceased work on the Property on November 16, 2011, for a period of more than sixty days. This argument is relevant to Gold Star's final deadline for recording its lien, but it is of no use in determining whether Gold Star recorded too early. Cessation of work for sixty days can establish completion of a work of improvement under the California Civil Code. Ca. Civ. Code § 3086 (repealed by Stats 2010 ch. 697 J 16 (SB 189), effective January 1, 2011, operative July 1, 2012, now Cal. Civ. Code § 8180). Completion of the work of improvement marks the last date on which a mechanic can record his lien, but it has no bearing on when a mechanic can first record his lien. Completion of the contract, rather than the work of improvement, marks the

10

beginning of the statutory period during which a mechanic can file his lien under § 3115. *Wright*, 38 Cal. Rptr. 2d at 776. A mechanic's lien that is filed too early is of no more use than one that is filed too late.

For the purpose of § 3115, a contract is complete when all work contemplated by the contract has been performed. *Id.* at 778-79. The Development Agreement and the testimony of Winters and Paul Krause both establish that work on the Property is not finished.[6] California courts have recognized that this standard can be unfair and contrary to legislative intent if the owner stonewalls completion by its own material breach of contract. These courts have held that a contract is also complete when the mechanic's duties are excused or discharged by some means other than performance. ***Kaweah Constr. Co. v. Fox Hills Landowners***, No. F062860, 2012 WL 6634137 at *3-4 (Cal. Ct. App. December 20, 2012) (citing *Wright*, 38 Cal. Rptr. 2d at 778-79). Gold Star argues that Cavu Rock's failure to pay invoices excused it from performance, but does not provide any legal support for this contention that nonperformance discharged Gold Star from its own obligations on or before November 21, 2011. The Development Agreement does not set a specific timeframe for payment. The evidence shows that Cavu Rock made significant payments to Gold Star for development costs. Cavu Rock sought to continue development and salvage its relationship with Gold Star even after Gold Star recorded its lien. Cavu Rock eventually rejected the Development Agreement through the bankruptcy proceedings, but not until long after Gold Star recorded its lien. Gold Star has not shown that it was somehow discharged of its duties under the Development Agreement by November 16, 2011. The lien is not valid under California state law because Gold Star did not complete its contract before recording the lien.

---

[6] Paul Krause, managing member of Cavu Rock, testified at a December 16, 2013, hearing in the main bankruptcy case on Gold Star's motion to temporarily allow its claim. The parties stipulated to admission of this testimony at the July 15, 2014, trial on this adversary proceedings.

The City of Bakersfield's notice of completion is of no help to Gold Star. The notice applies to only part of the work that Gold Star contracted to perform under the Development Agreement. Even if the notice did signify completion of all work, the city did not file the notice until December 19, 2011 – nearly a month after Gold Star recorded its lien. Additionally, a public entity's notice of completion is relevant to the end of the statutory period rather than the beginning. Ca. Civ. Code § 3115 (repealed by Stats 2010 ch. 697 J 16 (SB 189), effective January 1, 2011, operative July 1, 2012, now Cal. Civ. Code § 8180). The notice of completion does not bring Gold Star's lien into compliance with California state law.

Gold Star's lien is invalid. Cavu Rock and Gold Star did not form a partnership, nor would such a partnership prevent Gold Star from holding a lien on the Property. The lien is deficient regardless, because Gold Star did not file it within the timeframe dictated by California state law.

B. Objection to Gold Star's Claim

Cavu Rock asks this Court to disallow Gold Star's claim in its entirety, alleging (1) that Gold Star failed to provide invoices or other documentation to support its Proof of Claim and (2) that Cavu Rock fully compensated Gold Star for all work performed. This Court finds that Gold Star proved that it has a valid, but unsecured, claim for $743,382.29.

When a party objects to a claim, the Bankruptcy Court must determine whether and to what extent to allow the claim. 11 U.S.C. § 502(b)(i). A proof of claim filed in accordance with the Federal Rules of Bankruptcy Procedure is prima facie proof of that claim's validity and dollar value. Fed. R. Bankr. P. 3001(f). If an objecting party brings evidence that calls the claim into question, however, the claimant bears the burden of proving his or her claim. ***Cal. State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fid. Holding Co., Ltd.)***, 837

F.2d 696, 698 (5th Cir. 1988). This Court finds that Gold Star met that burden for the majority of its claim.

Cavu Rock and Gold Star provided testimony and financial records to support their opposing views of Gold Star's claim. Winters testified that Cavu Rock failed to compensate Gold Star fully even though Gold Star completed all work to satisfactory standards and with Cavu Rock's approval. Paul Krause testified that Cavu Rock paid Gold Star for all work invoiced and that Cavu Rock did not dispute any of the invoices. Cavu Rock alleges that Gold Star's claim includes work that Cavu Rock did not approve, but does not point to any specific work Gold Star performed without approval. Both parties provided correspondences between them suggesting that Gold Star kept Cavu Rock informed of its work, Cavu Rock encouraged Gold Star to continue work through December 2011, and Cavu Rock fell behind in payments to Gold Star. (GS8-10 and CR9). Cavu Rock provided bank records and copies of checks it wrote. (CR6).[7] The parties stipulated to the admission of these documents at trial. The parties also stipulated to the admission of a Summary Cavu Rock prepared of its transactions from 2006 through 2013. (CR15). Gold Star offered its invoices to Cavu Rock and invoices it received from subcontractors it employed to develop the Property, and the Court admitted these documents by stipulation as well. (GS8). The Court also admitted Gold Star's Construction Ledger as a summary of Gold Star's transactions and dealings. (GS7). Gold Star qualified this document as a business record at trial. The Construction Ledger credits Cavu Rock for payments to third party vendors. This Court can confirm the Construction Ledger's accuracy by cross referencing it with the invoices that Gold Star provided and the copies of checks that Cavu Rock provided. Cavu Rock's summary is broader in scope, and this Court cannot gauge its accuracy with certainty by cross referencing it with other admitted evidence.

---

[7] "CR" denotes Cavu Rock's exhibits.

13

According to Gold Star's Construction Ledger, Cavu Rock owed Gold Star $832,112.29 in unpaid invoices as of April 4, 2012. (GS7). The testimony at trial and Cavu Rock's Summary establish that Gold Star later received an $88,730 bond payment. (CR15). The evidence does not indicate that Cavu Rock made any other payments to Gold Star after April 4, 2012, nor does the evidence indicate that Gold Star invoiced Cavu Rock for new work after that date. The final balance, adjusted for the bond payment, is $743,382.29. Gold Star's $753,382.29 Proof of Claim is exactly $10,000 higher than the amount that the evidence indicates Gold Star is owed. This Court allows Gold Star's claim as unsecured, but only to the extent that Gold Star has proven the claim, which is $743,382.29.

### CONCLUSION

As the Court held when granting partial summary judgment to Cavu Rock, Gold Star's claim is unsecured under 11 U.S.C. § 506 because Wells Fargo's superior lien exceeds the Property's value. The claim is also unsecured because Gold Star's lien is deficient under California state law.

This Court is, therefore, of the opinion that Cavu Rock's prayer for a declaratory judgment that Gold Star's lien is invalid and of no effect should be GRANTED.

The Court is also of the opinion that Gold Star's claim should be ALLOWED, but only as an unsecured claim in the amount of $743,382.29.

Each party shall bear its own costs, and all relief not specifically granted herein should be DENIED. The Court will enter a Judgment on the docket to that effect.

###